UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

JERRY EUGENE POKRIOTS,

Petitioner,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Respondent.

Case No. 1:11-cv-00117-MHW

**MEMORANDUM DECISION AND ORDER**

## INTRODUCTION

Currently pending before the Court for its consideration is Petitioner Jerry Eugene Pokriots ("Petitioner") Petition for Review (Dkt. 1) of the Respondent's denial of social security benefits, filed December 14, 2009. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, and the administrative record ("AR"). For the reasons that follow, the Court will affirm the decision of the Commissioner.

## I.

## Procedural and Factual History

Petitioner filed an application for Disability Insurance Benefits on October 28,

2008, alleging disability beginning July 29, 2008, due to a disabling condition, primarily osteoarthritis. Petitioner's application was denied initially and on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge ("ALJ") James W. Sherry held a hearing on November 24, 2009, taking testimony from Petitioner and vocational expert Daniel R. McKinney, Sr. AR 61-67. At the time of the hearing, Petitioner was 54 years old. He has a twelfth grade education and his past relevant work includes logger and construction worker. ALJ Sherry issued a decision finding Petitioner not disabled on December 14, 2009.[1] AR 9-19.

Petitioner filed a timely appeal to the Appeals Council which denied his request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Petitioner appealed this final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.

## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving disability within the meaning of the Social Security Act. *Tackett v.*

---

[1] Petitioner was found disabled as of December 15, 2009 pursuant to a later application filed in 2010. Therefore, the issue before the Court is whether he was disabled between July 29, 2008, and December 14, 2009.

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). More specifically, the claimant has the burden of proving disability in the first four steps of the sequential evaluation after which the burden moves to the Commissioner at the fifth step. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date of July 29, 2008.

At step two, it must be determined whether claimant suffers from a severe impairment. The ALJ found that impairments to Petitioner's left shoulder, right elbow, left knee, and left hand were "severe" within the meaning of the Regulations due to left shoulder tendinosis with moderate to severe osteoarthritis; mild arthritic changes in his right elbow; left knee tear of medial meniscus and patellofemoral tracking abnormality, status post arthroscopic meniscectomy; and left hand mild degenerative changes.

At step three, it must be determined whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner did not have an impairment or combination of impairments that meets or equals the criteria for the listed impairments. If a claimant's impairments or combination of impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. Here, at step four, the ALJ found Petitioner was unable to perform his past relevant work as a logger or construction worker both of which are classified as

heavy work.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education, and work experience. Here, the ALJ found that Petitioner had the residual functional capacity to perform light work and that there were jobs that existed in significant numbers in the national economy that he could perform such as small parts and products inspector, cashier, or packer and inspector. Accordingly, the ALJ determined that Petitioner was not disabled.

**III.**

**Standard of Review**

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist which supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Id.* It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ carefully considers subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala,* 10 F.3d 678, 679-80 (9th Cir. 1993).

**IV.**

**Discussion**

Petitioner contends generally that the ALJ's decision gives too much weight to non-treating agency sources and too little weight to the treating and examining source opinions. In support of that contention, he identifies three issues specific issues. First, he alleges that the ALJ failed to consider certified physician's assistant Charlotte Ainge as an acceptable medical source and gave little weight to her assessment. Second, he alleges that the ALJ dismissed the findings of registered physical therapist Deborah Moore. Third, he alleges that the ALJ did not adequately consider Petitioner's use of a cane. The Court will address each issue in turn.

**A. Certified Physician's Assistant**

Petitioner contends that Ms. Ainge should be considered a primary treating source because certified nurse practitioners and certified physicians' assistants are licensed to practice medicine, prescribe medications, and serve as fully qualified medical providers in the State of Idaho and often serve in lieu of doctors in low income/subsidized rural

clinics. Petitioner further contends that Ms. Ainge was the only medical source he saw on a regular basis prescribing all of his medications and physical therapy. He cites no legal authority in support of his position.

Respondent, on the other hand, cites 20 C.F.R. § 404.1513 as distinguishing between "acceptable medical sources" and "other sources." Section 404.1513(a) limits acceptable medical sources to licensed medical or osteopathic doctors, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. Section 404.1513(d)(1) specifically classifies "physicians' assistants" as "other sources" whose evidence may be used only to show the severity of an impairment and how it affects ability to work.

The issue is easily resolved by reference to a recent Ninth Circuit case involving similar facts and issues. In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the court addressed an allegation that the ALJ should have given more weight to the opinion of the claimant's primary care provider, a physician's assistant, who treated her and provided her with medications for her panic disorder. In her written decision, the ALJ had stated that she considered but discounted the physician's assistant's opinions "because they were 'quite conclusory' and provided 'very little explanation of the evidence relied on in forming those opinions,'" that "they did not appear to be supported by Molina's objective medical condition and were inconsistent with [the examining psychiatrist's] opinion," and that Molina had cared for her granddaughters and not made any efforts to seek

counseling during the alleged disability period. *Id*. at 1110.

In disposing of Molina's contention, the Ninth Circuit noted the physician's assistant's status as "other source" and distinguished the standard for rejecting her testimony from the standard for rejecting the testimony of an acceptable medical source:

> In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine [v. Comm'r. Soc. Sec. Admin.]*, 574 F.3d [692] at 695 [9th Cir. 2009]. However, only licensed physicians and certain other qualified specialists are considered "[a]cceptable medical sources." 20 C.F.R. § 404.1513(a). Physician's assistants are defined as "other sources," § 404.1513(d), and are not entitled to the same deference, see § 404.1527; SSR 06–03p. The ALJ may discount testimony from these "other sources" if the ALJ " 'gives reasons germane to each witness for doing so.' " *See Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1224 (9th Cir. 2010) (quoting *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)).

*Id*. at 1111.

The court went on to state that the ALJ gave "germane reasons" for discounting the physician's assistant's opinions including that her opinion as to the impact of Molina's impairment on her ability to work was primarily a standardized form in which she failed to provide supporting reasoning or clinical findings, that her other opinions were conclusory and conflicted with her earlier assessments, and that her opinions were inconsistent with the psychiatric specialist whose opinion was entitled to greater weight. *Id*. at 1112.

As *Molina* makes clear, Ms. Ainge's records and opinion are not entitled to the

weight accorded those of a physician. Therefore, the ALJ could properly reject her opinions provided he gave "germane reasons" for doing so. The ALJ provided several such reasons including that her opinion was not consistent with the substantial medical evidence of record and the "persuasive opinions" of the state agency doctors, that recent examination findings were "essentially benign," that her opinion was "conclusory and inconsistent with treatment notes and examination findings summarized above," that her opinion appeared to be "based heavily on claimant's self reports," and that it was based also on the physical therapist's report which gave no indication as to how Petitioner was evaluated and which appeared to likewise be based on Petitioner's self reports. AR 17. The ALJ also noted that a treatment provider may be influenced by sympathy for the patient or by an insistent or demanding patient. Although noting that such motives are difficult to confirm, "they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." AR 17.

The Court finds that the ALJ did not err by failing to consider Ms. Ainge to be an acceptable medical source and by discounting her opinion that conflicted with the examining physicians' opinions and the medical evidence in the record.

**B. Physical Therapist**

Just as a physician's assistant is not an "acceptable medical source" whose opinion is entitled to significant deference, neither is a physical therapist. Therefore, for the

reasons stated above, the ALJ did not err in discounting registered physical therapist Deborah Moore's treatment notes and opinion which conflicted with the opinions of the examining physicians. The ALJ gave germane reasons for discounting her opinion. He specifically found she provided no indication as to how she evaluated Petitioner and she included limitations based only on Petitioner's self-report. AR 17. Furthermore, the specter of influence by sympathy for or the insistence of a demanding patient existed over Ms. Moore's treatment notes and opinion as well as over those of Ms. Ainge. AR 17.

The Court finds that the ALJ did not err in not crediting the findings of Ms. Moore.

**C. Use of a Cane**

Petitioner next claims that the ALJ did not adequately consider Petitioner's use of a cane and that he improperly rejected the need for the cane because it was not prescribed by a physician. He alleges that in Ex. 6F (AR 258) Dr. McNulty noted Petitioner was using a cane but found no reason to write a prescription for it because Petitioner was already using it, that Dr. McNulty did not oppose his using a cane, and that the ALJ should have inquired of the medical provider whether the use of a cane was necessary.

Petitioner's attorney elicited testimony about Petitioner's use of a cane after noting that it was mentioned in the file that Petitioner used a cane. AR 44. When asked how often he used a cane, Petitioner stated, "For any extended time I'm on my feet, you know,

if I want to take a walk, or if I'm going around the yard trying to pick up a little bit of yard work, or whatever I can do, you know." TR 44.

Petitioner's attorney again addressed Petitioner's use of a cane when he questioned Petitioner about his walking. In response to counsel's question as to whether he used a cane when walking, Petitioner responded, "Yes, I am. When I'm – if I'm going to be up for, you know, 15, 20 minutes, whatever, you know, and try to, try to move around, sit down, go sit down on a block of wood, get up, walk around the house." AR 51. He further responded that he had been using a cane "[s]ince right after I slipped off the log back there in June, or July, or whatever it was." AR 51. The logging accident occurred on July 8, 2008. AR 132.

In his decision, the ALJ noted that Petitioner "uses a cane for any extended time he is going to be on his feet." AR 14. The ALJ also noted that Petitioner was using a cane on August 21, 2008 and at the hearing. AR 16 (citing Exhibit 6F/4 (AR 258) which were Dr. McNulty's notes of an office visit in which he stated "He's been using a cane.") The Court has found only one other reference to a cane in the treatment records. The physical therapist noted on the same date that Petitioner used a cane. AR 221 ("using a cane today"). The ALJ concluded that "[T]here is no indication in the record that claimant was prescribed the use of a cane. Furthermore, the physical examinations do not indicate the need for a cane." AR 16. The ALJ had previously cited the medical records pertaining to those physical examinations. *See* AR 14-15.

Underscoring the ALJ's specific credibility findings regarding the need for a cane were his findings that as late as November 29, 2008, Petitioner engaged in a full range of activities of daily living such as gathering wood, mowing the lawn, going shopping, weeding flower beds, taking short rides on an ATV, going hunting, working on small woodworking projects, and performing many other household chores. AR 16-17. He further stated that the medical evidence revealed that Petitioner's physical impairments had not deteriorated from the time he completed his RFC report. AR 17. Although Petitioner testified at the hearing that his condition had deteriorated since that time, he continued to drive himself, cooked, barbecued, assisted with straightening up the house, did laundry, cleaned a bathroom occasionally, made a bed, gardened "a little bit," occasionally shoveled snow, and did some grocery shopping. AR 45-47.

The Social Security Administration's Program Operations Manual System (POMS) is described as "a primary source of information used by Social Security employees to process claims for Social Security benefits." *See* https://secure.ssa.gov/apps10/poms.nsf/Home?readform. The section on disability insurance includes guidance on medical-vocational evaluation and, in particular, determining any physical limitations and their effects of ranges of work. POMS DI 25020.005, entitled "Medically-Necessary Hand-Held Assistive Device," provides a link to DI 25015.020B.6 which tracks the language of Social Security Ruling ("SSR") 96-9p. *See* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425015020#b6. In relevant part, it

provides:

> To find that a hand-held assistive device is medically required, *there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed* (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

POMS DI 25015.020B.6 (emphasis added).

This section was cited recently in a district court decision addressing a challenge to the ALJ's determination that the claimant had the RFC to perform medium work. In rejecting the specific challenge to the ALJ's failure to credit the fact that his treating physician reported that claimant had to ambulate with a cane and walked with a limp, the court concluded:

> Here, although Dr. Marshall acknowledges Plaintiff's use of a cane, his medical notes reveal that he did not prescribe the cane, nor did he recommend the cane for ambulation. Moreover, Dr. Marshall's notes do not support the conclusion that the cane is medically necessary. Accordingly, the ALJ did not err in refusing to consider Plaintiff's use of a cane for ambulation in formulating his RFC.

*Mays v. Astrue*, 2012 WL 1865496 at *7 (N.D. Ohio, May 22, 2012).

Likewise, here, Dr. McNulty did not prescribe the use of a cane, did not recommend the use of a cane, and his notes do not support the conclusion that a cane is medically necessary. Although he may have acquiesced in Petitioner's use of a cane on August 21, 2008, the Court cannot infer that he found it necessary for Petitioner to use a

cane. At the time, Petitioner was approximately two-and-a-half weeks post-knee surgery. Use of a cane may or may not have been warranted at that time. However, Dr. McNulty's notes from subsequent visits made no mention of the use of or need for a cane. AR 256-257.

Dr. McNulty noted continued progress in Petitioner's recovery from knee surgery. Significantly, on September 4, 2008, Dr. McNulty stated that Petitioner was "a candidate for less strenuous work *because of his two shoulder injuries*" and opined that Petitioner "would be more suited in a less strenuous form of work *such as machine operator*. AR 257 (emphasis added). These comments are hardly suggestive of the need for a cane. On September 23, 2008, Dr. McNulty released Petitioner to work as an equipment operator and "rare to occasional use of a chain saw." AR 257. Although Petitioner complained that his knee was "screaming at him," Petitioner also informed Dr. McNulty that he was getting in and out of the Cat many times a day. AR 256. On November 13, 2008, Dr. McNulty noted that Petitioner advised that "he still has pain when walking for approximately a mile." AR 256. There is no indication that he used a cane to do so. Petitioner further advised at this visit that he occasionally "gets some catching [in his left knee] but nothing like it was before surgery." AR 256. Dr. McNulty concluded that Petitioner had "reached maximal medical improvement" and calculated a whole person impairment rating of 1% attributable to his knee injury. AR 256.

In his Function Report – Adult dated November 29, 2008, approximately two

weeks after his November 13, 2008, visit to Dr. McNulty, Petitioner listed a variety of activities he performed on a daily basis including helping his wife with house and yard chores, driving to town for groceries, riding his ATV, preparing meals, stacking wood, and engaging is small woodworking projects. AR 144-148. He stated that he could "only walk 1-1/2 miles" and that he could walk for approximately twenty minutes before needing to stop and walk. AR 149. Significantly, he omitted any reference in the narrative section of the report to needing a cane to walk although he checked the box for "Cane" in paragraph 21 in response to the question, "Do you use any of the following?". AR 150. In response to the question in the same paragraph whether it was prescribed by a doctor, he responded in the negative. AR 150. Finally, he stated that he used the cane for extra support "at times my knees get so sore." AR 150.

In his RFC assessment dated January 15, 2009, Dr. Coolidge did not check the box for indicating that "medically required hand-held assistive device is necessary for ambulation." AR 286.

An ALJ is required to provide "clear and convincing reasons" to reject a claimant's testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ here, in addition to noting that a cane was not prescribed, determined that Petitioner was not entirely credible regarding his need to use a cane. In doing so, he cited "clear and convincing reasons" set forth above.

Even where a physician has prescribed a cane, an ALJ's decision that a claimant's

use of a cane does not affect the claimant's ability to work. *See Brewer v. Astrue*, 2012 WL 40590 at *2 (N.D.W.Va. Feb. 8, 2012) (finding that there were other indications in the record that the cane was not medically required and the claimant did not consistently use a cane). *See also Khounesavatdy v. Astrue*, 549 F.Supp.2d 1218, 1232 (E.D.Cal. 2008) (finding that "adequately articulated reasoning and substantial evidence supported the Commissioner's finding that Plaintiff did not need to use a cane to ambulate" though prescribed by a physician).

The Court finds that the ALJ adequately considered Petitioner's use of a cane and his decision that it was not medically required was supported by substantial evidence.

## V.

## Conclusion

Based on its review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

**ORDER**

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act be **AFFIRMED** and that the petition for review be **DISMISSED**.

DATED: June 25, 2012

Honorable Mikel H. Williams
United States Magistrate Judge